UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MOHAMMAD MINHAJ KHOKHAR,<br><br>Plaintiff,<br><br>v.<br><br>AMJAD YOUSUF, et al.,<br><br>Defendants. | Case No: C 15-06043-SBA<br><br>Related to<br>Case No: C 17-01769 SBA<br><br>**ORDER TO SHOW CAUSE WHY ACTION SHOULD NOT BE DISMISSED** |

Plaintiff Mohammad Minhaj Khokhar ("Plaintiff"), acting pro se, brings the instant action for breach of contract against Amjad Yousuf ("Amjad"); Zarina Amjad ("Zarina"); Muhammad Ahmad Amjad aka Kamran ("Kamran"); Muammad Abdullah Amjad aka Khawar ("Khawar"); Kashif Mahmood; other members and relatives of Amjad Family; Marhaba Travels and Money Changers; Zamzam Builders & Developers; other businesses or entities under Marhaba, Zamzam, Amjad, and Khawar titles; and partners of Amjad Yousuf and Khawar (collectively "Defendants"). Dkt. 1. Defendants failed to appear or respond to the Complaint, and the Clerk entered default on May 16, 2016. Dkt. 18. Plaintiff's motion for default judgment is pending before the Court. Dkt. 32.

## I. BACKGROUND

### A. FACTUAL OVERVIEW

Plaintiff is a citizen of the United States, with residences in both California and Pakistan. Compl. ¶¶ 1(b), 6. Defendants, who are "family members, an employee, and some partners," are "all citizens of Pakistan." Id. ¶ 6. Defendants reside in Karachi, Pakistan, although "[s]ome of the Partners also live in Dubai, Abu Dhabi and Saudi Arabia." Id. ¶ 8. Defendants operate several businesses in Pakistan, including construction and property development businesses. Id. ¶ 7.

In "early 2008," Amjad approached Plaintiff seeking business investments. Id. ¶ 10. In or about July 2008, Plaintiff gave Amjad $120,482. Id. In September 2009, Plaintiff gave Amjad an additional $1 million. Id. ¶ 12. These transactions were later documented in a two-page "Agreement" between Plaintiff, on the one side, and Amjad and "Marhabah Travels & Tourism (pvt Ltd.)," on the other. Id. ¶ 17, Dkt. 1-1 pp. 1-3 ("First Agreement") at 1. The First Agreement identifies Plaintiff as a resident of both the United States and Pakistan, and identifies Amjad as a resident of Pakistan, with both residential and business addresses listed in that country. Id. The First Agreement provides that it is to be "adjudicated under the laws of the Government of Pakistan." Id. at 2. "In the event if [*sic*] no justice is provided and received, laws of Dubai or Malaysia or USA may apply." Id.

The First Agreement provides that Plaintiff had an outstanding investment of $1,102,410 with "Mr. Amjad and his company," and sets forth terms for the intermittent payment of "profit" and repayment of the principal. Id. at 1. The investments were for "various projects related to construction and real estate," with the profits "mainly distributed to charity organizations for education of orphans and salaries of their teachers" in Pakistan. Id. The First Agreement states that "profitability has been about 20%," but that Mr. Amjad and the Company "agree to do better this year and provide an estimated profit of about 30%," or possibly as much as 40% profit on "the existing construction project." Id. The First Agreement provides that Mr. Amjad and the Company were to return the original investment in full by October 23, 2010, but further provides for the return of the original investment funds within 30 days upon Plaintiff's demand. Id. at 1-2.

Thereafter, Defendants violated the First Agreement by, among other things, failing to pay "profits" as agreed. Compl. ¶ 18. Over the next few years, the parties entered into a series of subsequent agreements to modify the terms of repayment and extend the repayment deadline. As many as six such agreements were executed, variously signed by Amjad, his wife Zarina, and his sons Kamran and Khawar. The final agreement, dated December 5, 2014, is titled "Acknowledgment, Confirmation and a Promissory Note Agreement." Id. ¶ 50, Dkt. 1-1 pp. 21-22 ("Final Agreement"). The Final Agreement was

signed at Amjad's residence in Karachi, Pakistan, and printed on paper with a masthead of a Pakistan 50 Rupee note. Id. In the Final Agreement, Amjad agreed to repay the loan principal with accrued profits and penalties by no later than January 12, 2015. Id. The Final Agreement purports to bind Amjad "and his entire family." It is signed by Amjad and three other unidentified "family members," but not Zarina. Id. The Final Agreement provides that Plaintiff "can take legal actions against me as per previous agreements in any courts in Pakistan, Malaysia, or USA." Id. ¶ 8. According to Plaintiff, Defendants violated the Final Agreement and have failed to repay the funds. Compl. ¶¶ 54-55.

### B. PROCEDURAL HISTORY

On December 23, 2015, Plaintiff initiated the instant action for breach of contract. Dkt. 1. In addition to the loan principal of just over $1 million, he seeks various damages totaling more than $30 million. The action was initially assigned to Magistrate Judge Paul Grewal, and later reassigned to Magistrate Judge Laurel Beeler. On May 16, 2016, the Clerk entered default as to all defendants. Dkt. 18. On March 31, 2017, Plaintiff filed the pending Motion for Default Judgment. Dkt. 32. On May 25, 2017, Plaintiff filed a Brief on Jurisdictional Issues ("JX Brief") in support of default judgment. Dkt. 44.

In the meantime, on March 30, 2017, Plaintiff initiated a new action against Defendants, but named several additional other defendants, including the "Government of Pakistan through its Ministries," several named ministries, and at least one individual government official (collectively the "Pakistan Defendants"). Khokhar v. Government of Pakistan through Its Ministries, Case No. 17-CV-01769-SBA. The two actions were then related. Dkt. 39. On June 12, 2017, counsel entered a notice of appearance on behalf of the Pakistan Defendants in the latter filed action, and declined to consent to the jurisdiction of a magistrate judge. Consequently, both actions were reassigned to this Court on June 19, 2017. Dkt. 47.

Plaintiff has since filed two nearly identical motions urging this Court to enter default judgment. Dkt. 49, 51.

## II. LEGAL STANDARDS

The clerk may enter default against a party who fails to plead or otherwise defend an action. Fed. R. Civ. P. 55(a). After entry of default, a district court may enter a default judgment. Id. 55(b). The decision whether to grant or deny a default judgment lies within the sound discretion of the court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors a district court may consider in exercising its judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether the default was due to excusable neglect; and (7) the policy favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1472-73 (9th Cir. 1986).

## III. DISCUSSION

Now pending before the Court is Plaintiff's motion for default judgment. "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). Additionally, a district court "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007).

### A. JURISDICTION

#### 1. Subject Matter Jurisdiction

District courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a)(2). According to the allegations of the Complaint, Plaintiff is a citizen of the United States and Defendants are citizens of Pakistan. Compl. ¶ 6. The matter in

controversy exceeds the sum of $75,000.  Id. ¶¶ 1(a), 79-80.  Thus, the Court tentatively finds that it may exercise diversity jurisdiction over this matter.

### 2. Personal Jurisdiction

"A judgment entered without personal jurisdiction over the parties is void." Tuli, 172 F.3d at 712.  To avoid entry of a void judgment, a district court may dismiss an action *sua sponte* for lack of personal jurisdiction.  Id.; see also Facebook, Inc. v. Pedersen, 868 F. Supp. 2d 953 (N.D. Cal. 2012) (denying motion for default judgment on the ground that the plaintiff had failed to establish personal jurisdiction).  Where questions arise regarding the existence of personal jurisdiction, a court must provide the plaintiff notice and an opportunity to establish that jurisdiction is proper.  Tuli, 172 F. 3d at 713.

Here, the only basis for personal jurisdiction alleged by Plaintiff is consent.  See Compl. ¶ 1(c) ("The Defendants have agreed to have the lawsuit heard in Courts of all fifty States of America of which California is part.")  Specifically, Plaintiff asserts that Defendants "agreed to jurisdiction of the USA courts in the [First Agreement]." JX Brief ¶ 2.  Plaintiff refers to the portion of the agreement that provides: "The Agreement is adjudicated under the laws of the Government of Pakistan.  In the event if [*sic*] no justice is provided and received, laws of Dubai or Malaysia or USA may apply."  Id. (citing First Agreement at 2).  Plaintiff asserts that Defendants also consented to the jurisdiction of the courts of the United States in the Final Agreement.  Id. ¶ 5.  Plaintiff refers to the portion of the agreement that provides: "I also acknowledge that [Plaintiff] can take legal action against me as per previous agreements in any courts in Pakistan, Malaysia or USA."  Id. (citing Final Agreement ¶ 8).  Plaintiff argues that the "I" in that statement means "Defendants," but acknowledges that the agreement is signed by only two of the named defendants, i.e., Amjad and Khawar.  Id.; see also Compl. ¶ 50.

As a threshold matter, the Court notes that Plaintiff confuses "choice of law" and "choice of forum" or "forum selection" clauses.  See generally, 77 Am. Jur. 2d Venue § 10.  A forum selection clause designates the state or court where litigation may be brought, while a choice-of-law clause identifies the substantive law that will be applied.  Id.; see also

17A Am. Jur. 2d Contracts § 253 (defining a forum selection clause) & § 255 (defining a choice of law clause). Even assuming that the choice of law clause set forth in the First Agreement—which provides for application of the law of Pakistan, *or*, *if justice is not attained*, the law of Dubai *or* Malaysia *or* the United States—is contractually enforceable so as to invoke application of the law of the United States (a proposition this Court finds questionable), that clause merely identifies the law that governs the contract, not the forum in which suit may be brought.

Unlike the clause identified in the First Agreement, the clause identified in the Final Agreement constitutes a forum selection clause. Generally, acceptance of a forum selection clause evidences consent to personal jurisdiction in the specified forum(s). S.E.C. v. Ross, 504 F.3d 1130, 1149 (9th Cir. 2007). The Court tentatively finds, however, that the forum selection clause in the Final Agreement does not apply to a majority of the named defendants in this action. "Under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction . . . provided that the defendant agrees to be so bound . . . ." Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 458 (9th Cir. 2007) (internal citations omitted) (holding that personal jurisdiction was lacking over certain entities that did not agree to be bound by the forum selection clause). "The fundamental element lacking here is any evidence that [certain of the named defendants] agreed to the clause." Id.

The Final Agreement has signatory lines for "Mr. Amjad Yusuf" and "Mrs. Amjad Yusuf (Zarina)," but is signed only by Amjad. Plaintiff explicitly alleges that Zarina declined to sign the Final Agreement. Compl. ¶ 52. The Final Agreement also has a section designated "Other Family members," under which Khawar signed. None of the other named defendants are parties to the Final Agreement, and Plaintiff fails to allege any other basis for binding them to the forum selection clause contained therein. Accordingly, personal jurisdiction appears to be lacking as to all Defendants except Amjad and Khawar.

## B. FORUM NON CONVENIENS

Additionally, "[f]ederal district courts have discretion to dismiss an action under the doctrine of *forum non conveniens*." Ayco Farms, Inc. v. Ochoa, 862 F.3d 945, 948 (9th Cir. 2017) (citing Am. Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994) (internal citations omitted)). A district court "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Sinochem, 549 U.S. at 432. A court may issue a *forum non conveniens* dismissal *sua sponte*, so long as the parties are given notice and an opportunity to present their views. Costlow v. Weeks, 790 F.d 1486, 1488 (9th Cir. 1986).

As a threshold matter, the Court notes that the aforementioned forum selection clause is not an impediment to a *forum non conveniens* dismissal. Forum selection clauses take two forms—mandatory and permissive. See generally, 77 Am. Jur. 2d Venue § 10. "There is a vast difference between the two." Hsu v. OZ Optics Ltd., 211 F.R.D. 615, 618 (N.D.Ca. 2002) (citations omitted). A forum selection clause is mandatory if it clearly designates a forum as exclusive. N. California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995). "A mandatory forum selection clause is presumed valid and is to be strictly enforced." Hsu, 211 F.R.D. at 618 (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)). On the other hand, a permissive forum selection clause merely provides the parties' consent to jurisdiction in a particular forum, but is not exclusive. Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987). Where a forum selection clause is permissive, a typical *forum non conveniens* analysis is applied. See Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V., 145 F.3d 505, 510 (2d Cir. 1998); accord McNeil v. Stanley Works, 33 F. App'x 322, 324 (9th Cir. 2002) (concluding that the district court property applied a *forum non conveniens* analysis where the parties executed a permissive forum selection clause).

Under a traditional *forum non conveniens* analysis, dismissal is appropriate only if: (1) an adequate alternative forum exists; and (2) the balance of private and public interest

factors favor dismissal. Ayco, 862 F.3d at 948 (quotation omitted). An alternative forum is adequate if the defendants are subject to service of process or consent to be sued in that jurisdiction and the forum permits a satisfactory remedy. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981). If an adequate alternative forum exists, the Court weighs a number of private and public interests factors to determine whether dismissal is warranted. The private interest factors are: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. Ayco, 862 F.3d at 950. The public interest factors are: (1) the local interest of the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) the amount of congestion in the court; and (5) the costs of resolving a dispute unrelated to the forum. Id.

Because Plaintiff has not previously had notice of the Court's intention to consider whether a *forum non conveniens* dismissal is appropriate, the Court will give Plaintiff the opportunity to address this matter. However, the Court makes the following, preliminary observations. Although Plaintiff is a citizen of the United States, he also maintains a residence in, and frequently travels to, Pakistan. Defendants, who have not appeared in this action, reside in Pakistan. Furthermore, as discussed above, this Court appears to lack personal jurisdiction over a majority of the named defendants. In contrast, it appears that a court in Pakistan would have jurisdiction over most, if not all, of the named defendants. At a minimum, both Amjad and Khawar, as Pakistani citizens, are subject to service of process in Pakistan. Resolution of the underlying contractual dispute would be governed by the laws of Pakistan. Additionally, a judgment by this Court would not be directly enforceable in Pakistan, where the Defendants reside.[1] In view of the foregoing, as well as an initial

---

[1] Pursuant to Pakistan Civil Procedure Code, 1908 § 44-A, a plaintiff may execute a foreign judgment in Pakistan only if the country from which the judgment was obtained is a reciprocating territory. The United States is not a reciprocating territory. See Office of the Advocate General Punjab, Rulings, 2006 CLC 1328.

review of all applicable private and public interest factors, the Court tentatively finds that dismissal on the grounds of *forum non conveniens* may be appropriate in this action. Accordingly,

IT IS HEREBY ORDERED THAT Plaintiff shall show cause in writing why this action should not be dismissed: (1) for lack of personal jurisdiction; and/or (2) on *forum non conveniens* grounds. Plaintiff's response, which shall not exceed ten (10) pages, must be filed within twenty-one (21) days of the date this Order is filed. Failure to fully and timely comply with this order may constitute grounds for dismissal.

IT IS SO ORDERED.

Dated: 8/16/17

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge