UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

MOHAMMAD MINHAJ KHOKHAR,

        Plaintiff,

    v.

AMJAD YOUSUF, et al.,

        Defendants.

Case No:  C 15-06043-SBA

Related to
Case No: C 17-01769 SBA (closed)

**ORDER DISMISSING ACTION**

Plaintiff Mohammad Minhaj Khokhar ("Plaintiff"), acting pro se, brings the instant action for breach of contract against Amjad Yousuf ("Amjad"); Zarina Amjad ("Zarina"); Muhammad Ahmad Amjad aka Kamran ("Kamran"); Muammad Abdullah Amjad aka Khawar ("Khawar"); Kashif Mahmood; other members and relatives of Amjad Family; Marhaba Travels and Money Changers; Zamzam Builders & Developers; other businesses or entities under Marhaba, Zamzam, Amjad, and Khawar titles; and partners of Amjad Yousuf and Khawar (collectively "Defendants").  Dkt. 1.  Defendants failed to appear or respond to the Complaint, and the Clerk entered their default.  Dkt. 18.

Thereafter, Plaintiff filed the pending motion for default judgment.  Dkt. 32.  Upon reviewing the motion, the Court issued an order to show cause why the action should not be dismissed for lack of personal jurisdiction and/or on the ground of *forum non conveniens*. Dkt. 52.  Plaintiff has responded to the order to show cause.  Dkt. 57.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DISMISSES the action in its entirety, for the reasons stated below.[1]

---

[1] The Court, in its discretion, finds this matter suitable for resolution without oral argument.  <u>See</u> Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I. BACKGROUND

## A. FACTUAL OVERVIEW

Plaintiff is a citizen of the United States, with residences in both California and Pakistan. Compl. ¶¶ 1(b), 6. Defendants, who are "family members, an employee, and some partners," are "all citizens of Pakistan." Id. ¶ 6. Defendants reside in Karachi, Pakistan, although "[s]ome of the Partners also live in Dubai, Abu Dhabi and Saudi Arabia." Id. ¶ 8. Defendants operate several businesses in Pakistan, including construction and property development businesses. Id. ¶ 7.

In "early 2008," Amjad sought "business investments" from Plaintiff. Id. ¶ 10. In or about July 2008, Plaintiff gave Amjad $120,482. Id. In September 2009, Plaintiff gave Amjad an additional $1 million. Id. ¶ 12. The transactions were later documented in a two-page "Agreement" between Plaintiff, on the one side, and Amjad and "Marhabah Travels & Tourism (pvt Ltd.)," on the other. Id. ¶ 17, Dkt. 1-1 pp. 1-3 ("First Agreement") at 1. It identifies Plaintiff as a resident of both the United States and Pakistan, and identifies Amjad as a resident of Pakistan. Id. The First Agreement provides that it is to be "adjudicated under the laws of the Government of Pakistan." Id. at 2. "In the event if [*sic*] no justice is provided and received, laws of Dubai or Malaysia or USA may apply." Id.

The First Agreement states that Plaintiff has an outstanding investment of $1,102,410 with "Mr. Amjad and his company," and sets forth terms for repayment of the principal and intermittent payment of "profit." Id. at 1. The investments were for "various projects related to construction and real estate" in Pakistan, with the profits "mainly distributed to charity organizations for education of orphans and salaries of their teachers." Id. The First Agreement states that "profitability has been about 20%," but that "Mr. Amjad and [the] [C]ompany agree to do better this year and provide an estimated profit of about 30%," or possibly as much as 40% profit on "the existing construction project." Id. The First Agreement provides that Mr. Amjad and the Company were to return the original investment in full by October 23, 2010, but further provides for the return of the original investment funds within 30 days upon demand by Plaintiff. Id. at 1-2.

Thereafter, Defendants purportedly violated the First Agreement by, among other things, failing to pay "profits" as agreed.  Compl. ¶ 18.  Defendants also failed to return the original investment upon demand.  Id. ¶ 27.  Over the next few years, the parties entered into a series of subsequent agreements to modify the terms of repayment and extend the repayment deadline.  As many as six such agreements, variously signed by Amjad, his wife Zarina, and his sons Kamran and Khawar, were executed.  One of these agreements contemplated the transfer of a building owned by Defendants to Plaintiff as partial payment.  Id. ¶ 49.  It appears the transfer was never completed, however.  Id. ¶ 67.

The last of the agreements, dated December 5, 2014, is titled "Acknowledgment, Confirmation and a Promissory Note Agreement."  Id. ¶ 50, Dkt. 1-1 pp. 21-22 ("Final Agreement").  The two-page agreement, printed on stamp paper with a 50 rupee note, was executed at Amjad's residence in Karachi.  Id. ¶ 51.  In the Final Agreement, Amjad agreed to repay the principal with unspecified profits and penalties by no later than January 12, 2015.  Final Agreement ¶ 2.  The Final Agreement purports to bind Amjad "and his entire family."  Id. at 1.  It is signed by Amjad and three unidentified "family members," but not by Zarina, who refused to sign.  Id. at 2; Compl ¶ 52.  According to Plaintiff, one of the unidentified signatures belongs to Khawar.  Id. ¶ 50.  The Final Agreement provides that Plaintiff "can take legal actions against me as per previous agreements in any courts in Pakistan, Malaysia, or USA."  Final Agreement ¶ 8.  According to Plaintiff, Defendants violated the Final Agreement and failed to repay the funds owed.  Compl. ¶¶ 54-55.

**B.  PROCEDURAL HISTORY**

On December 23, 2015, Plaintiff initiated the instant action for breach of contract.  Dkt. 1.  In addition to the loan principal of just over $1 million, he seeks various damages totaling more than $30 million.  The action was initially assigned to Magistrate Judge Paul Grewal, and later reassigned to Magistrate Judge Laurel Beeler.  On May 16, 2016, the Clerk entered default as to all defendants.  Dkt. 18.

On March 31, 2017, Plaintiff filed a Motion for Default Judgment.  Dkt. 32.  He seeks damages of over $30 million on his contractual claim, but seeks total damages of over

$110 million for other injuries not alleged in the complaint, including reputational harm and business losses. In the motion, Plaintiff asserts that Defendants have defrauded a host of other victims by similarly failing to repay their investments. Plaintiff further asserts that, after filing the instant action, he sought the help of Pakistan's Federal Investigation Agency ("FIA") to investigate the purportedly criminal and civil wrongs of Defendants. Amjad, in turn, filed a civil suit against Plaintiff, as well as various FIA officials in Pakistan. In support of the default judgment motion, Plaintiff also filed a Brief on Jurisdictional Issues ("JX Brief"). Dkt. 44.

In the meantime, on March 30, 2017, Plaintiff initiated a new action against Defendants, as well as the "Government of Pakistan through its Ministries," several named ministries, and one FIA official (collectively the "Pakistan Defendants"). Khokhar v. Government of Pakistan through Its Ministries, Case No. 17-CV-01769. The two actions were deemed related. Dkt. 39. On June 12, 2017, counsel appeared on behalf of the Pakistan Defendants in the latter filed action and declined to consent to the jurisdiction of a magistrate judge. As a result, both actions were reassigned to this Court. Dkt. 47.[2] Thereafter, Plaintiff filed two motions urging the Court to enter default judgment in this action on the theory that Magistrate Judge Beeler was prepared to do so prior to the reassignment. Dkt. 49, 51. The Court denied the motions. Dkt. 53.

On August 16, 2017, the Court issued an Order to Show Cause ("OSC"), directing Plaintiff to show cause in writing why the action should not be dismissed for lack of personal jurisdiction and/or on the ground of *forum non conveniens*. Dkt. 52. After receiving a brief extension, Plaintiff filed a Response to Show Cause Notice ("Response"), along with supporting exhibits and declarations. Dkt. 57.

## II. LEGAL STANDARDS

The clerk may enter default against a party who fails to plead or otherwise defend an action. Fed. R. Civ. P. 55(a). After entry of default, a district court may enter a default

---

[2] Khokhar v. Government of Pakistan through Its Ministries was subsequently dismissed on October 10, 2017. See Case No. 17-CV-01769, Dkt. 64.

judgment.  Id. 55(b).  The decision whether to grant or deny a default judgment lies within the sound discretion of the court.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors a district court may consider in exercising its judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether the default was due to excusable neglect; and (7) the policy favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1472-73 (9th Cir. 1986).

Upon entry of default, well-pleaded factual allegations of the complaint, except those relating to the amount of damages, are taken as true.  See Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); see also Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).  "A defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law," however.  DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (quotation omitted); see also Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) ("[F]acts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment.").  Additionally, a plaintiff must provide proof regarding the extent of any damages.  See Fed. R. Civ. P. 8(b)(6); see also Geddes, 559 F.2d at 560.

## III.   **DISCUSSION**

The Court issued an OSC directing Plaintiff to show cause why the action should not be dismissed for lack of personal jurisdiction and/or under the doctrine of *forum non conveniens*.  In his Response, Plaintiff acknowledges certain "weaknesses" with regard to the issues raised in the OSC, but urges the court to set aside these "technicalities" in favor of achieving justice.  Response at 15-16.  Plaintiff asserts that the Court enjoys personal jurisdiction over the Defendants, and further asserts that the United States is the only suitable forum for this action.  For the reasons set forth below, the Court disagrees.

## A. JURISDICTION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). "A judgment entered without personal jurisdiction over the parties is void." Id. Thus, to avoid entry of a void judgment, a district court may dismiss an action *sua sponte* for lack of personal jurisdiction. Id.; e.g., DFSB Kollective Co. v. Bourne, 897 F. Supp. 2d 871, 877 (N.D. Cal. 2012) (denying motion for default judgment for lack of personal jurisdiction); Facebook, Inc. v. Pedersen, 868 F. Supp. 2d 953 (N.D. Cal. 2012) (same). In the OSC, the Court tentatively found personal jurisdiction lacking as to all Defendants except Amjad and Khawar. Having considered Plaintiff's Response, the Court now affirms that finding.

### 1. Consent to Jurisdiction

The only basis for personal jurisdiction alleged in the Complaint is consent. Compl. ¶ 1(c) ("The Defendants have agreed to have the lawsuit heard in Courts of all fifty States of America of which California is part.") In support of that allegation, Plaintiff avers that Defendants agreed to the jurisdiction of the courts of the United States in both the First Agreement and the Final Agreement. JX Brief ¶¶ 2, 5. Specifically, Plaintiff refers to the portion of the First Agreement that provides: "The Agreement is adjudicated under the laws of the Government of Pakistan. In the event if [*sic*] no justice is provided and received, laws of Dubai or Malaysia or USA may apply." First Agreement at 2. He also refers to the portion of the Final Agreement that provides: "[Plaintiff] can take legal action against me . . . in any courts in Pakistan, Malaysia or USA." Final Agreement ¶ 8. Plaintiff asserts that the Final Agreement is binding on Defendants, but acknowledges that it is signed by only two of the named defendants—Amjad and Khawar. Id. ¶ 5; see also Compl. ¶ 50.

With respect to the First Agreement, Plaintiff confuses "choice of law" and "choice of forum" or "forum selection" clauses. See 77 Am. Jur. 2d Venue § 10. A forum selection clause designates the state or court where litigation may be brought, while a choice-of-law clause identifies the substantive law that will be applied. Id.; 17A Am. Jur. 2d Contracts

- 6 -

§§ 253 (defining forum selection clause) & 255 (defining choice of law clause).  Even assuming that the choice of law clause set forth in the First Agreement—which provides for application of the law of Pakistan, *or*, *if justice is not attained*, the law of Dubai *or* Malaysia *or* the United States—is contractually enforceable so as to invoke application of the laws of the United States (a proposition this Court finds doubtful), the clause merely identifies the law that will govern the contract, not the forum in which suit may be brought.  Consequently, consent to jurisdiction does not arise out of the First Agreement.

Unlike the clause at issue in the First Agreement, the clause at issue in the Final Agreement constitutes a forum selection clause.  Generally, acceptance of a forum selection clause evidences consent to personal jurisdiction in the specified forum(s).  <u>S.E.C. v. Ross</u>, 504 F.3d 1130, 1149 (9th Cir. 2007).[3]  "The fundamental element lacking here," however, "is any evidence that [certain named defendants] agreed to the clause."  <u>Holland Am. Line Inc. v. Wartsila N. Am., Inc.</u>, 485 F.3d 450, 458 (9th Cir. 2007) (concluding that personal jurisdiction was lacking over entities that did not agree to be bound by a forum selection clause).  The Final Agreement has signatory lines for "Mr. Amjad Yusuf" and "Mrs. Amjad Yusuf (Zarina)," but is signed only by Amjad.  Compl. ¶ 50.  Zarina declined to sign the Final Agreement.  <u>Id</u>. ¶ 52.  The Final Agreement also has a section designated "Other Family members," under which Khawar allegedly signed.  <u>Id</u>. ¶ 50.  None of the other named defendants are parties to the Final Agreement, and Plaintiff fails to allege any other basis for binding them to the forum selection clause contained therein.  Accordingly, personal jurisdiction by consent is lacking as to all Defendants except Amjad and Khawar.

Plaintiff admits that he confused "choice of law" and "choice of forum" clauses.  Response at 15.  According to Plaintiff, "he understood laws of the land are also the forum of the lawsuit."  <u>Id.</u>  "To him, when the Defendants agreed and consented for the matter to be heard in USA courts, he also understood that it applies to both, the law and the forum."

---

[3] A forum selection clause is prima facie valid, and is enforceable absent a strong showing that it should be set aside.  <u>Manetti-Farrow, Inc. v. Gucci Am., Inc.</u>, 858 F.2d 509, 514 (9th Cir. 1988) (citing <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15 (1972)).

Id.  Plaintiff asserts that Defendants had the same understanding, but offers no evidence in support of this assertion.  Id. at 16 ("They also understood courts of USA under USA laws and nothing more or nothing less.").  Stating that "[t]his debate is technical and more applicable to lawyers," Plaintiff pleads with the Court "not to apply these stringent technicalities and [instead] look at how and where justice may be served to a victim and his family."  Id.  Plaintiff's explanation fails to establish personal jurisdiction, however.

First, personal jurisdiction is not a mere technicality, but a prerequisite to a valid judgment.  In re Tuli, 172 F.3d at 712 ("A judgment entered without personal jurisdiction over the parties is void.").  Further, while personal jurisdiction ordinarily may be waived, the Court's duty to establish jurisdiction over the parties is of heightened importance in this action, given that a judgment rendered without it will be unenforceable in Pakistan.  See 2 Enforcement of Money Judgments (Lawrence W. Newman ed., 2017), at PAK-8 (to enforce a foreign judgment in Pakistan it is essential that the foreign court had jurisdiction over the defendant) (citing Pakistan Code of Civil Procedure, 1908, ("CPC") § 13 (foreign judgments are not enforceable unless "pronounced by a Court of competent jurisdiction")).

Second, Plaintiff's conclusory assertion regarding the parties' purported misunderstanding of the choice of law and forum selection clauses is wholly insufficient to counter the plain language of the agreements.[4]  Generally, "a written instrument is presumed to express the true intent of the parties."  20th Century Ins. Co. v. Liberty Mut. Ins. Co., 965 F.2d 747, 759, n.12 (9th Cir. 1992) (citing In re Beverly Hills Bancorp., 649 F.2d 1329, 1333 (9th Cir. 1981)).  "Reformation or revision on the ground of mutual mistake . . . requires clear and convincing evidence of the alleged mistake," and the burden is on the party seeking reformation to present such evidence.  Id.  Plaintiff offers no such evidence, only a bare assertion.  The plain language of the agreement therefore governs.

---

[4] Forum selection and choice of law clauses are interpreted according to federal law. Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009).  When interpreting a contract under federal law, courts "look for guidance 'to general principles for interpreting contracts.'"  Id. (quoting Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999)).

## 2.     Alternative Bases for Jurisdiction

For the first time in response to the OSC, Plaintiff also argues that personal jurisdiction may be established by other means, including Defendants' contacts with Plaintiff in the forum, Plaintiff's economic losses in the forum, Defendants' involvement in money laundering, and Defendants' participation in the events giving rise to Plaintiff's injury.  Plaintiff fails to establish personal jurisdiction on any of these alternative bases, which the Court addresses in turn.

### a.     Contact with the Forum

Plaintiff acknowledges that "Defendants live in Pakistan and much of the action took place in Pakistan."  Response at 16.  Nonetheless, Plaintiff argues that Defendants have had sufficient contacts with him in the forum to establish personal jurisdiction.  Id.  First, Plaintiff asserts that Amjad visited California on three occasions—in 2007, 2010, and 2011. Response at 16.  According to Plaintiff, Amjad attempted to solicit an investment during the 2007 visit.  Id.  Second, Plaintiff asserts that Amjad had "enough contacts with the Plaintiff via numerous telephone calls and messages."  Id.  For example, Plaintiff "received emails of profit [statements] from [Amjad] while in California."  Id.  Third, Plaintiff asserts that Zamzam Builders "have a webpage to sell units in the Marhaba Trade Center being built on the land bought with Plaintiff's money."  Id. at 17.  Plaintiff states that "[t]here are no restrictions if a USA buyer wants to buy a unit or the entire building."  Id.

"Due process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (internal quotation omitted)).[5] "Depending on the strength of those contacts, there are two forms that personal jurisdiction

---

[5] "'Federal courts ordinarily follow state law in determining the bounds of the jurisdiction over persons.'  Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,' our inquiry centers on whether exercising jurisdiction comports with due process."  Picot, 780 F.3d at 1211 (quoting Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014)).

may take: general and specific." Id. General jurisdiction will lie as to all claims against a nonresident defendant whose contacts with the forum are "substantial, continuous, and systematic." Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002). Alternatively, specific jurisdiction may lie as to a claim that "arises out of or has a substantial connection to a defendant's contacts with the forum." Id.

Here, Defendants' alleged contacts with the forum are plainly insufficient to establish general jurisdiction. To establish general jurisdiction, nonresident defendants must engage in continuous and systematic business contacts that "render them essentially at home" or "approximate physical presence" in the forum state. Goodyear Dunlop Tires Operation, S.A. v. Brown, 564 U.S. 915, 919 (2011); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (quotation omitted). A handful of visits and telephone calls, even for the purpose of soliciting an investment from a forum resident, hardly approximate physical presence. See Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) ("engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders") (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418 (1984)); Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir. 1984) (holding that the solicitation of business in the forum, several visits and purchases therein, as well as numerous telephone calls, telexes, and letters did not confer general jurisdiction). Likewise, the operation of a commercial and/or interactive website accessible to forum residents fails to confer general jurisdiction. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1226-27 (9th Cir. 2011). General jurisdiction is therefore lacking.

The alleged contacts are also insufficient to establish specific jurisdiction. To establish specific jurisdiction: (1) the defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of

jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1016 (9th Cir. 2008). As a threshold matter, the operation of a website to market the Marhaba Trade Center fails to confer specific jurisdiction because Plaintiff's claims do not arise out of or relate thereto. As for the visits, telephone calls, and emails, the Court notes that such contacts, if for the purpose of soliciting or negotiating the investments at issue, could give rise to specific jurisdiction.[6] Aside from the assertion that Amjad sought an investment during his 2007 trip to California, however, there is no evidence that these encounters or communications actually gave rise to Plaintiff's investment in 2008. In any event, these contacts involve Amjad, over whom jurisdiction by consent already has been established. In determining the existence of personal jurisdiction, "[e]ach defendant's contacts with the forum State must be assessed individually." <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984). The alleged contacts thus fail to establish personal jurisdiction over any of other named defendants.

### b. Economic Loss in the Forum

Plaintiff next argues that his economic losses had repercussions in the United States. Response at 17. He asserts that "damage done by Defendants in Pakistan hurt a USA citizen who is a productive member of the US business community." <u>Id.</u> Specifically, due to financial losses, he had to "shut down his offices in Silicon Valley." <u>Id.</u> Absent other minimum contacts, however, "mere injury to a forum resident is not a sufficient connection to the forum." <u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1125 (2014) (citing <u>Calder</u>, 465 U.S. at 788-89). "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum

---

[6] A foreign defendant's contract with a forum resident does not alone establish personal jurisdiction. <u>Boschetto</u>, 539 F.3d at 1017 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 478-79 (1985)). Rather, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" must be evaluated to determine whether the defendant established minimum contacts. <u>Burger King</u>, 471 U.S. at 478-79. Business transactions that result from direct solicitations or negotiations in the forum state likely give rise to personal jurisdiction, particularly where the transactions create continuing relationships and obligations within the forum. <u>Resnick v. Rowe</u>, 283 F. Supp. 2d 1128, 1139 (D. Haw. 2003) (citing <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d 834, 840 (9th Cir. 1986)).

State." Id.  Here, "the effects of [Defendants'] conduct on [Plaintiff] are not connected to [California] in a way that makes those effects a proper basis for jurisdiction." Id.

### c.    Money Laundering

Plaintiff further asserts that "Defendants are cash smugglers involved in money laundering," and that "some of these funds support drug dealers and terrorist organizations." Response at 18.  According to Plaintiff, courts in the United States enjoy personal jurisdiction over anyone involved in such activities. Id. at 19.  Again, Plaintiff fails to establish a basis for personal jurisdiction.  Plaintiff offers no evidence that Defendants are involved in money laundering and no authority demonstrating that such activities necessarily give rise to personal jurisdiction in a civil action between private parties.  Moreover, even if these assertions were supported, Defendants' purported money laundering activities are wholly unrelated to the instant breach of contract action, and thus, irrelevant to the jurisdictional analysis.  See Goodyear, 564 U.S. at 919 ("In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'").

### d.    Involvement in the Wrongful Course of Conduct

Having failed to establish any other basis for personal jurisdiction, Plaintiff argues that each named defendant is "involved in one way or the other" in the dispute giving rise to this action.  Response at 21.  For example, Plaintiff notes that Zarina signed at least one of the agreements between the parties, and asserts that her failure to sign the Final Agreement "does not mean she is absolved of her responsibility, or that the [agreement she signed] was cancelled[.]" Id. at 20.  This argument demonstrates a fundamental misunderstanding of personal jurisdiction.  The question before the Court is not whether Zarina (or any other named defendant) is liable for the alleged misconduct, but rather, whether she is subject to suit for that conduct in this Court.  As discussed above, with the exception of Amjad and Khawar, the named defendants are not subject to suit in this Court.  Thus, the Court does not reach the issue of their underlying liability.

### e.  Jurisdiction for Purposes of Enforcement

Finally, even if the Court were to find that it has personal jurisdiction over Defendants on the alternative grounds asserted by Plaintiff, such a finding would be insufficient to ensure enforcement of the Court's judgment in Pakistan.  As discussed further in the context of the *forum non conveniens* analysis, a judgment by this Court is not directly enforceable in Pakistan; rather, enforcement requires the filing of a separate suit in Pakistan under section 13 of the CPC.  Pursuant to CPC section 13, a foreign judgment is not enforceable unless "pronounced by a Court of competent jurisdiction."  2 Enforcement of Money Judgments, at PAK-8.  For purposes of section 13, personal jurisdiction must be determined "not by the territorial law of the foreign State but by the rules of private International law."  Id. at PAK-15 (quoting Fazal Ahmed v. Abdul Bari, PLD 1952 Dacca 155).  Jurisdiction by consent is sufficient to satisfy the requirement of CPC section 13, id. at PAK-15; jurisdiction based on minimum contacts, is not, id. at PAK-16 & 17.

### 3.  Conclusion

Accordingly, except as to Amjad and Khawar, the Court finds that personal jurisdiction is lacking.

### B.  FORUM NON CONVENIENS

The *forum non conveniens* doctrine enables a district court to decline to exercise jurisdiction if "the litigation can be more appropriately conducted in a foreign tribunal."  Gulf Oil Corp. v Gilbert, 330 U.S. 501, 504 (1947).  A court "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007).  A court may issue such a dismissal *sua sponte*, so long as the parties are given notice and an opportunity to respond.  Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986).

A *forum non conveniens* dismissal is appropriate if an adequate alternative forum exists and the balance of private and public interest factors favor dismissal.  Ayco Farms, Inc. v. Ochoa, 862 F.3d 945, 948 (9th Cir. 2017).  The private interest factors are: (1) the

residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.  Id. at 950.  The public interest factors are: (1) the local interest of the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) the amount of congestion in the court; and (5) the costs of resolving a dispute unrelated to the forum.  Id.

### 1.    Forum Selection Clause

In the absence of a forum selection clause, a plaintiff's choice of forum is generally afforded deference, especially if the plaintiff is a United States citizen or resident.  Ayco Farms, 862 F.3d at 949-50; Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981) (noting that when a plaintiff selects his or her home forum, it is reasonable to assume that the forum is convenient).  That deference is "far from absolute," however.  Ayco Farms, 862 F.3d at 950 (quotations and citations omitted) (noting that the mere presence of an American plaintiff is not alone sufficient to bar a *forum non conveniens* dismissal). Further, when the Plaintiff does not reside in the chosen forum, his or her choice of forum is entitled to less deference.  Id. at 950; see also Ranza v. Nike, Inc., 792 F.3d 1059, 1076-77 (9th Cir. 2015) (affording less deference to the choice of forum of a United States citizen residing permanently abroad).

When the parties execute a forum selection clause, the preselected forum is afforded deference.  Atl. Marine Constr. Co. v. U.S. Dist. Ct., 134 S. Ct. 568, 581-82 (2013) (holding that a plaintiff's choice of an alternate forum "merits no weight").  Additionally, in conducting the *forum non conveniens* analysis, the private interest factors merit no consideration.  Id. at 582.  "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient . . . .  A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum."  Id.  "[W]hatever 'inconvenience' [the parties] would suffer by being

forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." Id. (quoting Bremen, 407 U.S. at 17-18).

The instant case presents a somewhat unusual situation. Unlike a typical forum selection clause that designates a specific forum, the clause at issue here permits, but does not require, suit to be brought in any of the courts of Pakistan, Malaysia, or the United States.[7] By filing suit in the United States, Plaintiff has selected one of the designated forums. However, the alternative forum under consideration—Pakistan—is also a designated forum. Dismissal in favor of a Pakistani forum therefore would not contravene the forum selection clause. In view of the foregoing, the Court affords deference to the forums designated in the forum selection clause. Given that the forum selection clause is not definitive, Plaintiff's choice among the designated forums is also due some deference; because Plaintiff has agreed to litigate in any of the designated forums, however, that deference is less than would ordinarily be afforded absent a forum selection clause. For the same reason, the Court gives less weight to the private interest factors that implicate the parties' inconveniences in litigating in the designated forums. Whatever inconveniences the parties would suffer by litigating in the designated forums was clearly foreseeable at the time of contracting.

### 2. Alternative Forum

At the outset of any *forum non conveniens* inquiry, the court must determine whether an adequate alternative forum is available to the plaintiff. Lueck v. Sundstrand Corp., 236 F.3d 1137, 1143 (9th Cir. 2001). As a threshold matter, this requires that the defendant be amenable to service of process in the foreign forum. Id. (citing Piper Aircraft, 454 U.S. at 254 n.22). Here, it appears that the named defendants are amenable to service in Pakistan.

---

[7] Forum selection clauses take two forms: mandatory and permissive. See 77 Am. Jur. 2d Venue § 10. "There is a vast difference between the two." Hsu v. OX Optics Ltd., 211 F.R.D. 615, 618 (N.D. Cal. 2002). A forum selection clause is mandatory if it designates a forum as "exclusive." N. Cal. Dist. Counsel of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995). On the other hand, a permissive forum selection clause merely provides the parties' consent to jurisdiction in a particular forum, but does not preclude litigation in another forum. Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987).

At a minimum, Amjad and Khawar are amendable to service in Pakistan, both because they are residents of the country and consented to the jurisdiction of its courts.

An alternative forum will be found adequate if it provides the plaintiff "some remedy for his wrong." Id. In "rare circumstances," however, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all," the foreign forum may be deemed lacking. Piper Aircraft, 454 U.S. at 254 & n.22 (holding that a forum is not inadequate merely because its laws are less favorable or offer a lesser remedy to the plaintiff); Lueck, 236 F.3d at 1143 ("The effect of Piper Aircraft is that a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong.").

Plaintiff claims that Pakistan is an inadequate forum because its courts are too plagued by corruption and delay to provide justice.[8] Plaintiff asserts that the only way to prevail in litigation in Pakistan is to "hire lawyers who have 'good relationships with the judges' and pay gifts (*bribes*)." Response at 2. He further asserts that the judiciary in Pakistan is severely backlogged, with cases commonly "pending for 10, 15, 20 and even more than 25 years." Id. at 4.

To demonstrate that a foreign nation is an inadequate forum due to corruption or delay, "a party must make a 'powerful showing' that includes specific evidence." Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1226 (9th Cir. 2011) (quoting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1179 (9th Cir. 2006)). Generalized and anecdotal evidence of corruption and delay is insufficient to support a finding of a forum's inadequacy. Tuazon, 433 F.3d at 1179 (reversing the district court's finding that the

_____

[8] Plaintiff also discusses the inadequacy of several other institutions in Pakistan, including the police, the FIA, and the Ministry of Overseas Pakistanis and Human Resources Development, asserting that none of these entities will aid him in his pursuit of justice against Defendants. The competence of these institutions is not directly relevant to the Court's inquiry, however. The matter before the Court is a civil action for breach of contract, and the pertinent question is whether Pakistan provides an adequate alternative forum for Plaintiff to litigate this claim. The fact that the authorities undertaking a criminal investigation into Amjad (and other named defendants) are ineffective, or that certain government ministries are unable or unwilling to provide assistance to Plaintiff in a civil or criminal proceeding, is immaterial.

Philippines was an inadequate forum); <u>Carijano</u>, 643 F.3d at 1226-27 (affirming the district court's finding that the plaintiff's expert affidavits were "too generalized and anecdotal 'to pass value judgments on the adequacy of Peru's judicial system'").

In support of his claim regarding Pakistan's judicial system, Plaintiff relies on his own conclusory assertions, a few Pakistani newspaper articles, and the declarations of three Pakistani attorneys. This evidence is insufficient to meet the requisite "powerful showing" standard. Plaintiff's own assertions are conclusory and anecdotal. Likewise, the newspaper articles are generalized and often immaterial. For example, Plaintiff refers to an article concerning delays in Pakistan's criminal justice system, Dkt. 32-4 at 14-15, while this case is civil in nature. <u>See</u> <u>Tuazon</u>, 433 F.3d at 1179 (noting that reports regarding human rights and criminal justice in the foreign forum were of little value in evaluating the judiciary's ability to render justice in a civil proceeding).[9]

The attorney declarations fare no better. As a threshold matter, the declarations fail to satisfy the statutory requirement that a witness certify the truth of an unsworn statement by stating that it is "under penalty of perjury under the laws of the United States of America."[10] Setting that aside, the declarations offer no specific evidence of corruption and delay. One of the declarants simply provides an overview of the process to enforce foreign judgments in Pakistan, with no opinion regarding the adequacies of Pakistan's judicial system. Dkt. 58-2. Although the other two declarants speak to purported delays and corruption, they offer only generalized statements. <u>E.g.</u>, Dkt. 58-1 ("Delays and bribes are common in Pakistani courts and so is the influence by politicians, clans, and members of

---

[9] Notably, Plaintiff sought the assistance of the Ministry of Overseas Pakistanis and Human Resource Development in connection with this controversy. Plaintiff provides a letter from the Grievance Commissioner for Overseas Pakistanis, wherein the Commissioner describes an effort to designate special judges to hear cases of overseas Pakistanis in limited time (i.e., 6 months). Dkt. 59-1. Pakistan thus appears to have an interest in expediting civil cases like Plaintiff's.

[10] To establish a matter by an unsworn declaration executed outside the United States, the declaration must be subscribed by the declarant as true under penalty of perjury, and dated, in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746.

bar council."); Dkt. 59-2 ("Only people with influence and money who can 'buy justice' go to courts to prevent any legal actions against them.").  Additionally, the Court notes that the declarations are not given by impartial experts, but by counsel who represent Plaintiff in Pakistan in connection with this controversy.

In view of the foregoing, the Court finds that Plaintiff fails to adduce specific evidence sufficient to make the "powerful showing" necessary to support a finding that Pakistan is an inadequate legal forum.

### 3.    Private Interest Factors

Turning to the balancing of the private and public interest factors, the Court finds that the private interest factors support dismissal in favor of a Pakistani forum.

Although Plaintiff is a resident of California, he also maintains a residence in, and frequently travels to, Pakistan.  Defendants—who have not appeared in this action—reside in Pakistan.  As discussed above, the parties to the Final Agreement consented to the jurisdiction of the courts of both the United States and Pakistan.  Plaintiff, Amjad, and Khawar thus contemplated and accepted the inconveniences associated with litigating in either the United States or Pakistan.  For the Defendants who are not parties to the Final Agreement, however, the Court notes that Pakistan is plainly a more convenient forum relative to the United States.

Regarding witnesses and physical evidence, the events in question took place almost exclusively in Pakistan, and the Court expects all material witnesses and evidence to be located in that country.  Notably, this action largely depends on written agreements, which have been filed in this Court.  Insofar as the action raises a dispute over the transfer of physical property in partial satisfaction of Defendants' debts, however, deeds and other records regarding the ownership of that property are located in Pakistan.  Furthermore, while Plaintiff relies solely on the parties' written agreements, the Court notes (and discusses in further detail, below) that resolution of this action solely by reference to the written agreements is not a simple proposition.  To the extent that additional proceedings are required, the Court would be unable to compel testimony or discovery because Pakistan

is not a signatory to the Hague Convention.  Additionally, while Plaintiff may rely on well-pleaded allegations to establish liability, damages must be proven by competent evidence.

Furthermore, any judgment issued by this Court is not directly enforceable in Pakistan.  Pursuant to CPC section 44-A, a foreign judgment may be executed in Pakistan only if the country from which the judgment was obtained is a reciprocating territory. 2 Enforcement of Money Judgments, at PAK-4.  Pakistan does not have a reciprocating agreement with the United States.  Id. at PAK-3.  Consequently, if a judgment were to issue from this Court, Plaintiff would be required to file a new suit in Pakistan with the foreign judgment as a cause of action.  Id. at PAK-8.  Under CPC section 13, a foreign judgment may be deemed unenforceable: (a) where it has not been pronounced by a Court of competent jurisdiction; (b) where it has not been given on the merits of the case; (c) where it appears on the face of the proceedings to be founded on an incorrect view of International Law or a refusal to recognize the law of Pakistan in cases in which such law is applicable; (d) where the proceedings in which the judgment was obtained are opposed to natural justice; (e) where it has been obtained by fraud; [or] (f) where it sustains a claim founded on a breach of any law in force in Pakistan.  Id. (quoting CPC section 13).  Thus, enforcement of a judgment rendered by this Court is far from simple or certain.[11]  On the other hand, a judgment rendered in Pakistani would require no foreign enforcement.

Finally, as for other practical problems that complicate the litigation, the Court notes that personal jurisdiction is lacking as to most of the named defendants.  Consequently, any relief granted by this Court would be against Amjad and Khawar only, and enforceable against only their assets.  In contrast, it appears that a Pakistani court would have jurisdiction over most, if not all, of the named defendants, thereby allowing for a more complete resolution of the action.

---

[11] Indeed, Plaintiff requests that the Court "write a letter to the Interior Minister of Pakistan . . . to help implement any judgment that is granted against these Defendants." Dkt. 32-1 at 4.  Enforcement in Pakistan is beyond the Court's purview, however, and sovereignty principles prevent interference with Pakistan's judicial process.

### 4. Public Interest Factors

The public interest factors also strongly support dismissal.

As a threshold matter, the Court notes that Defendants have not appeared in this action, and thus, the dispute likely will not proceed to trial. Indeed, Plaintiff asks this Court to conclude the action by entering default judgment. Therefore, the burdens and costs associated with resolving this action presumably would be less. Having preliminarily reviewed the action on the merits, however, the Court finds that resolution of the motion for default judgment is not straightforward, and, in fact, entry of default judgment is doubtful.

In brief, Plaintiff seeks to recover over $30 million in damages for breach of an investment agreement. The contractual terms regarding the expected return on investment are impossibly vague, however. The First Agreement, which is only two pages in length, contemplates the intermittent payment of "profit," but the intervals of such payments, as well as the particular investment vehicles from which profit is to be derived, are left unspecified. Even the amount of profit is indefinite, with potential figures ranging from 20% to 40% (of what, it cannot be determined). Likewise, "accrued profits and penalties" due under the Final Agreement are unspecified. Consequently, even assuming that the agreements remain enforceable despite these material ambiguities, Plaintiff would be unlikely to recover any sum beyond the loan principal. The Court would expend considerable effort and expense to resolve these issues.

At the same time, this forum has only a minimal interest in adjudicating an action for breach of a contract that was executed in Pakistan regarding investments in Pakistan. The action's only connection to this forum is through Plaintiff's status as a resident of California. On the other hand, Pakistan has a strong interest in ensuring that investors are secure in their investments within the country. Indeed, an FIA investigation was opened to investigate the conduct at issue in this action. Further, given the circumstances surrounding the formation of the contract, as well as its terms, resolution of the underlying contractual dispute will be governed by the laws of Pakistan, with which this Court is unfamiliar. See Atl. Marine Constr., 134 S. Ct. at 582 (a federal court sitting in diversity follows the

choice-of-law rules of the State in which it sits); <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3 Cal. 4th 459, 466 (1992) (reviewing California's choice-of-law rules).  Application of the laws of Pakistan may be of particular significance in this action, given that the agreements are unconventional and potentially unenforceable under the general contractual principles applied in the United States.

### 5. Conclusion

The Court does not minimize the financial losses allegedly suffered by Plaintiff, nor discount his reasons for filing suit in the United States.  In view of the foregoing, however, the Court finds that Pakistan is the more appropriate forum, and thus, that dismissal under the *forum non conveniens* doctrine is warranted.  It appears that the pendency of this action will have tolled the statute of limitations for filing an action in Pakistan.  <u>See</u> Pakistan Limitation Act, 1908, Part III, § 14(1) (excluding from the limitation period time spent prosecuting an action in another court which, "from defect of jurisdiction, or other cause of like nature, is unable to entertain it").  Thus, the imposition of conditions is not required. <u>See</u> <u>Carijano</u>, 643 F.3d at 1234 (district courts are not required to impose conditions on *forum non conveniens* dismissals where unnecessary to ensure an alternative forum).

## IV. <u>CONCLUSION</u>

For the reasons stated above, IT IS HEREBY ORDERED THAT the instant action is DISMISSED: (1) for lack of personal jurisdiction as to all named defendants, except Amjad and Khawar, and (2) under the *forum non conveniens* doctrine as to all named defendants.

The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: 03/30/2018

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge